**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

UNITED STATES OF AMERICA,

v.

KAREEM AWAD.

Criminal Action No. 19-602 (MAS)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court on Defendant **Kareem Awad's** ("Awad") Motions for Compassionate Release under the First Step Act (the "Act"), 18 U.S.C. § 3582(c)(1)(A). (ECF Nos. 56, 59.)[1] The United States of America (the "Government") opposed (ECF No. 61), and Awad replied with medical records (ECF No. 65). Awad also filed an Affidavit in support of his Motion. (ECF No. 57.) The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1, which applies to criminal cases under Local Criminal Rule 1.1. For the reasons below, the Court denies Awad's Motions.

I.    **BACKGROUND**

While investigating a drug trafficking organization supplying cocaine in Newark, New Jersey, law enforcement officers observed Awad leaving a cocaine supplier's house holding what appeared to be a weighted box. (Gov't's Opp'n Br. 2 (citing Presentence Report ("PSR") ¶¶ 23-25), ECF No. 61.) Awad placed the box inside a Honda CRV and drove away. (*Id.*) The law enforcement officers followed Awad with their lights and sirens activated, but Awad did not pull

---

[1] Awad's Motions appear to be very similar, if not duplicate, filings. (*See* ECF Nos. 56, 59.) The Court will reference only ECF No. 59 in its Memorandum Opinion.

over. (Gov't's Opp'n Br. 3 (citing PSR ¶ 25).) Rather, Awad pulled off on an exit ramp and continued to speed away without stopping. (*Id.*) Law enforcement officers were ultimately able to box Awad in, but Awad still refused to get out of the car. (*Id.*) According to law enforcement officers, Awad was on the telephone repeating, "they got me, they got me." (*Id.*) The box in the back of the car was recovered and contained a scale as well as a substance that tested positive for the presence of cocaine. (*Id.* at 3 (citing PSR ¶¶ 25-26).)

Awad was charged in a three-count indictment with (1) conspiracy to distribute cocaine in violation of 21 U.S.C. § 864, (2) possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), as well as 18 U.S.C. § 2, and (3) removal of property to prevent search or seizure in violation of 18 U.S.C. §§ 2232(a) and 2. (Indictment 1-3, ECF No. 43.) Awad pleaded guilty to the three-count indictment for which he was sentenced to 82 months' imprisonment on counts one and two, and 60 months' imprisonment on count three, all counts to be served concurrently. (*See* Plea Agreement 1-2, ECF No. 49; ECF Nos. 54, 55.)

At the time of sentencing, Awad had fourteen prior convictions spanning multiple states and courts. (Gov't's Opp'n Br. 4 (citing PSR ¶¶ 56-67).) These prior convictions include: possession of a controlled and dangerous substance; burglary; aggravated assault against a corrections officer; harassment for making terroristic threats; criminal possession of a weapon; receiving stolen property; resisting arrest; and disorderly conduct for possessing a stolen car and fleeing from police. (*Id.*) Awad has also repeatedly violated the terms of his supervised release and has multiple parole revocations. (*Id.*)

The Court sentenced Awad on January 27, 2021. (*See* ECF Nos. 54, 55.) Awad is incarcerated at Federal Correctional Institute Memphis ("FCI Memphis"), and his projected release

date is September 21, 2024. (Def.'s Moving Br. *24, ECF No. 59.)[2] To date, Awad has served

approximately 68 percent of his full-term of imprisonment and 80 percent of his statutory term,

which accounts for good conduct time credit. (*See id.*) Awad's Motion is now ripe for adjudication.

## II.   <u>LEGAL STANDARD</u>

A district court generally has limited authority to modify a federally imposed sentence once

it commences. *See United States v. Epstein*, No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9,

2020); *Dillon v. United States*, 560 U.S. 817, 825 (2010). The Act, however, permits district courts

to grant compassionate release where "extraordinary and compelling reasons" support a reduction

in sentence. 18 U.S.C. § 3582(c)(1)(A)(i). The statute provides, in relevant part, that:

> (A) the court, upon motion of the Director of the Bureau of Prisons
> [("BOP")], or upon motion of the defendant after the defendant has
> fully exhausted all administrative rights to appeal a failure of the
> [BOP] to bring a motion on the defendant's behalf or the lapse of 30
> days from the receipt of such a request by the warden of the
> defendant's facility, whichever is earlier, may reduce the term of
> imprisonment (and may impose a term of probation or supervised
> release with or without conditions that does not exceed the unserved
> portion of the original term of imprisonment), after considering the
> factors set forth in section 3553(a) to the extent that they are
> applicable, if it finds that—
>          (i) extraordinary and compelling reasons warrant such a
> reduction[.]

18 U.S.C. § 3582(c). As such, under the Act, a district court "may grant a compassionate release

motion if [it] finds that the sentence reduction is (1) warranted by extraordinary and compelling

reasons, (2) consistent with applicable policy statements issued by the U.S. Sentencing

Commission, and (3) supported by the traditional sentencing factors under 18 U.S.C. § 3553(a)

. . . ." *United States v. Andrews*, 12 F.4th 255, 258 (3d Cir. 2021) (internal quotations omitted)

(citing 18 U.S.C. § 3582(c)(1)(A)). District courts are not bound "by the Commission's policy

---

[2] Page numbers preceded by an asterisk reflect page numbers atop the ECF header.

statement" for defendant-filed compassionate release motions. *Id.* at 259. But the policy statement provides guidance, as it lists examples of medical conditions that may qualify as extraordinary and compelling reasons. *See* U.S.S.G. § 1B1.13, cmt. N.1(A)(i) (reflecting that the standard is met if a defendant has a terminal illness, serious medical condition, or deteriorating health).

## III.   **DISCUSSION**

At the outset, the Government does not contest that Awad's Motion may be considered by the Court, as Awad satisfied his administrative remedies requirement by first petitioning the BOP for compassionate release over thirty days before filing his Motion. (Gov't's Opp'n Br. 11.) The Court thus turns directly to the merits of Awad's Motion and addresses *first* whether he has demonstrated extraordinary and compelling reasons for release that are consistent with any applicable policy statements; and *second*, whether the 18 U.S.C. § 3553(a) factors support a reduction in sentence. *Last*, after conducting its compassionate release analysis, the Court addresses Awad's alternative request for home confinement.

### A.   **Awad Fails to Show Extraordinary and Compelling Reasons for Release.**

Awad, now thirty-nine years old, raises multiple arguments in favor of finding extraordinary and compelling reasons in his case. (*See generally* Def.'s Moving Br.) In sum, Awad argues that his "ominous medical status, in combination with the ongoing [COVID-19] pandemic, and his family circumstances, creates a unique situation for the Court to consider modifying his sentence and releasing him to home confinement." (*Id.* at *7-8.) He claims that despite being vaccinated for COVID-19, his medical conditions—abdominal pain, blood in his stool, asthma, hernia, anemia, scoliosis, and kidney disease—increase his risk of severe illness or death if he were to contract COVID-19. (*Id.* at *2-4.) Awad also explains that his parents and brother are severely

4

ill, suffering from cancer and acute kidney disease, respectively. (*Id.*) Putting it all together, Awad declares that he presents extraordinary and compelling reasons warranting a reduction in sentence.

The Government disagrees. (*See generally* Gov't's Opp'n Br.) It argues that Awad's stated medical conditions and family circumstances "are insufficient to warrant consideration as 'extraordinary and compelling' reasons for release." (*Id.* at 11-12.) The Government specifically notes contradictions between Awad's stated medical conditions and his medical records and argues that Awad's conditions are effectively managed by FCI Memphis. (*Id.* at 12-13, 15.) The Government also notes that Awad's family hardships, while difficult, do not rise to the level of extraordinary and compelling circumstances justifying release. (*Id.* at 18-20.)

Section 3582(c) does not define what constitutes "extraordinary and compelling reasons," so courts routinely look to the U.S. Sentencing Commission's policy statement governing sentence reductions. *United States v. Moe*, 571 F. Supp. 3d 267, 270 (D.N.J. 2021). Although the policy statement is not binding, it serves as a guide to help decipher the "extraordinary and compelling" language within the statute. *Andrews*, 12 F.4th at 260 ("[A]lthough the policy statement is no longer binding, it still sheds light on the meaning of extraordinary and compelling reasons."). Under that policy statement, a defendant meets the standard on health-related grounds if he suffers from a terminal illness or if the defendant is:

> (I)  suffering from a serious physical or medical condition,
> (II)  suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of
>       the aging process,
>
>     that substantially diminishes the ability of the defendant to
>     provide self-care within the environment of a correctional
>     facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. n.1(A)(i)-(ii). Subsection (D) of the Application Note to § 1B1.13, the catch-all provision, examines "extraordinary and compelling reason other than, or in combination with," the other three categories. *Id.* cmt. n.1(D).

At this stage of the COVID-19 pandemic, numerous courts have addressed compassionate release motions premised on the risk of contracting the virus. *E.g.*, *United States v. Cottle*, No. 18-0113, 2022 WL 1963658, at *3 (D.N.J. June 6, 2022) (addressing and denying a defendant's COVID-19 related compassionate release motion). It is settled that "the existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit." *United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020).

In evaluating Awad's proffered reasons, the Court finds that he fails to present extraordinary and compelling circumstances. As an initial matter, the Court is concerned with the contradictions between Awad's stated medical conditions and those reflected in his medical records. For example, Awad claims that the prison left him "to possibly die," without the asthma medication he needed, when medical records demonstrate that he had "mild" and infrequent flare-ups that left him with "a little wheezing." (Def.'s Moving Br. *3; ECF 62-1 at *83.) Awad also claims to suffer from anemia, but the only mention of anemia in his medical records is a note stating that he "[d]oes not appear anemic or in any distress." (Def.'s Moving Br. *3; ECF No. 62 at *68.)

Even assuming, however, that Awad does suffer from these medical conditions, they are still insufficient to demonstrate extraordinary and compelling circumstances. To be sure, courts have routinely denied requests for compassionate release to inmates with similar—and much more severe—conditions. *See, e.g.*, *United States v. Coleman*, 848 F. App'x 65, 67 (3d Cir. 2021)

(finding no error in the District Court's conclusion that the defendant's asthma, high blood pressure, HIV, "weak heart," and a potentially cancerous mass on his thyroid are not extraordinary and compelling reasons for purposes of § 3582(c)(1)(A)(i)); *see also United States v. Henderson*, 858 F. App'x 466, 468 (3d Cir. 2021) (holding that kidney disease and asthma along with other medical conditions did not warrant compassionate release); *see also United States v. Naber*, No. 19-0602, 2021 WL 791868, at *2 (D.N.J. Mar. 1, 2021) (gastrointestinal conditions including stomach ulcers, colitis, and bile duct strictures are not risk factors).

The Court recognizes an increased risk of health-related complications due to COVID-19, but, "the existence of a widespread health risk is not, without more, a sufficient reason for every individual subject to a properly imposed federal sentence of imprisonment to avoid . . . that sentence." *United States v. Roeder*, 807 F. App'x 157, 160-61 (3d Cir. 2020). Bolstering this conclusion, the Court notes that Awad received the COVID-19 vaccine. (Def.'s Moving Br. *4; *see also United States v. Watkins*, No. 04-309, 2021 WL 1627765, at *2 (W.D. Pa. Apr. 27, 2021) (concluding that the COVID-19 vaccine meaningfully protected the defendant, who suffered from obesity and hypertension, and thus he failed to show extraordinary and compelling reasons for release). Awad, not even forty years old, is "significantly less likely to require hospitalization or die from a COVID-19 infection than adults aged sixty-five" or older. *United States v. Powell*, No. 08-592, 2021 WL 4272759, at *4 (D.N.J. Sept. 21, 2021). Thus, the remaining risks to Awad simply are not extraordinary and compelling. *See United States v. Moye*, 2020 WL 6273905, at *2 (S.D.N.Y. Oct. 26, 2020) (finding that a defendant with diabetes, hypertension, and asthma failed to present extraordinary and compelling reasons in fearing COVID-19).

Awad also raises health concerns with his parents and brother. (Def.'s Moving Br. *4.) Awad explains that his mother had a tumor removed from her head but is experiencing regrowth,

his stepfather has prostate cancer, and his brother has acute kidney disease and may need a transplant. (*Id.* at \*4.) While the Court is sympathetic to the health concerns of Awad's family, Courts have denied compassionate release requests under similar circumstances. *See, e.g.*, *United States v. Henry*, No. 13-0091, 2020 WL 3791849, at \*4 (E.D.N.Y. July 6, 2020) (defendant not entitled to compassionate release because "[c]are of parents is not a qualifying basis for release" and defendant failed to demonstrate he was the only available caregiver). Awad's familial circumstances simply do not rise to the level of "extraordinary and compelling" justifying release.

### B.   The § 3553(a) Factors Do Not Weigh in Favor of Granting Awad Compassionate Release.

To be sure, even if Awad demonstrated "extraordinary and compelling reasons," the § 3553(a) factors that the Court must consider would still undermine his release.[3] Awad contends that the factors "either require [his] release or do not require otherwise." (Def.'s Moving Br. \*13.) Specifically, Awad contends that FCI Memphis did not provide him with "life saving medication" for five months (an asthma pump), and he should, therefore be released early or sent to home confinement. (*Id.* at \*14.) He further argues that because he has served more than 50 percent of his sentence, he has received a "just deterrence" and his sentence "adequately reflect[s] the seriousness of his offense." (*Id.* at \*15.) While acknowledging his extensive criminal history, Awad considers himself "a low to minimum risk of recidivism." (*Id.* at \*16, \*17.)

---

[3] The § 3553(a) sentencing factors are (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentences and sentencing ranges established for the defendant's crimes; (5) pertinent policy statements issued by the U.S. Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

The Government counters that the factors weigh strongly against Awad's release. (Gov't's Opp'n Br. 20.) Walking through the factors, the Government argues that Awad's crimes were serious and reflect a need for deterrence. (*Id.* at 21.) The Government outlines Awad's extensive criminal history, noting Awad's aggravated assault charge and conviction that Awad received while incarcerated, against two corrections officers. (*Id.* at 22.) The Government also contends that Awad has not served enough of his sentence. (*Id.* at 22-23.)

On balance, the Court finds that the relevant considerations weigh against reducing Awad's sentence. Awad has an extensive criminal history that cannot be ignored, including convictions that occurred while both incarcerated and out on supervised release. (*See, e.g., id.* at 22.) Related to his current charges, Awad fled the scene while police attempted to detain him, with drugs and drug paraphernalia in his vehicle, endangering the officers and others on the road. (*Id.* at 1-3 (citing PSR ¶¶ 23-26).) Cutting Awad's sentence short would woefully ignore the seriousness of his offense and the need for just punishment. *See United States v. Edwards*, No. 19-0266, 2021 WL 2903074, at *3 (E.D. Pa. July 9, 2021) (denying compassionate release to a defendant who served 67% of his sentence because he endangered his community by selling drugs); *see also United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020) (holding that courts can take into account time remaining to be served when considering compassionate release). It would also generate an unwarranted disparity with other defendants convicted of similar offenses, many of whom are serving decades-long sentences. *See* 18 U.S.C. § 3553(a)(2). Finally, the Court is concerned with Awad's chance of recidivism. (*See* Def.'s Moving Br. *15 (noting that the BOP rated Awad as a medium risk of recidivism).) In general, Awad failed to identify sentencing factors that support a reduction in sentence, nor can the Court identify any. So, the Court separately finds that a reduction in sentence is unwarranted under the sentencing factors.

**C.      The Court Lacks Authority to Grant Home Confinement.**

Alternatively, Awad asks the Court to transfer him to home confinement. (Def.'s Moving Br. *5.) The Court need not spill much ink on this request. Although the Act allows courts to grant compassionate release, the CARES Act does not give district courts the power to order an incarcerated individual to home confinement. *United States v. Calabretta*, No. 12-0131, 2020 WL 6055441, at *4 (D.N.J. Oct. 14, 2020) ("The CARES Act does not empower a district court to transfer an inmate to home confinement; rather, that decision rests solely within the discretion of the BOP."); *United States v. Batista*, No. 18-0415, 2020 WL 4500044, at *4 (D.N.J. Aug. 5, 2020) ("An application for home confinement is distinct from a motion to reduce the term of imprisonment under Section 3582(c), which does not authorize the Court to dictate the place of confinement."). The Court, therefore, denies this request.

**IV.      CONCLUSION**

For the foregoing reasons, Awad's Motions for Compassionate Release are denied. An appropriate order will follow this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE